IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARSHALL THOMPSON, on behalf himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 13 C 1063 ) |
| GETTY IMAGES (US), INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Marshall Thompson, on behalf of a proposed class of similarly situated persons, has sued Getty Images (US), Inc., alleging that it violated the Illinois Right of Publicity Act, 765 ILCS 1075/30 (IRPA). Thompson filed the case in state court, and Getty Images removed it to federal court based on diversity of citizenship.[1] Getty Images has moved to dismiss Thompson's complaint, and Thompson has moved for partial summary judgment. Getty Images has also moved to defer ruling on Thompson's motion pursuant to Federal Rule of Civil Procedure 56(d). For the reasons stated below, the Court grants Getty Images' motion to dismiss and denies the remaining motions as moot.

## Background

The Court takes the following facts from Thompson's first amended complaint and the parties' submissions on the motion to dismiss.

---

[1] The complaint that Thompson filed in state court adequately alleged diversity of citizenship.

Getty Images is a stock photography agency that provides licenses of images that it displays on its website. To find images available for license, users visiting Getty Images' website can type search terms into a search box. Low quality, watermarked sample images matching a user's search terms appear on the website and are made available for licensing. Many of these images are licensed "for editorial use only," thus conditioning the end user's right to use the image for commercial purposes upon obtaining proper rights and clearances. This is made clear to the user via warnings that are displayed on the screens that the user reviews.

Marshall Thompson is the last surviving member of a well-known rhythm and blues singing group, the Chi-Lites. He is also the co-owner of a record company with Joseph Jackson, Michael Jackson's father.

In his complaint, Thompson alleges that Getty Images violated the IRPA by posting and offering for sale on its website approximately six images of Thompson without his permission. Getty Images offered the photographs "for editorial use only."

Thompson has moved for partial summary judgment, and Getty Images has moved to dismiss. Getty Images has also moved to defer ruling on Thompson's summary judgment motion pursuant to Federal Rule of Civil Procedure 56(d). Because the Court grants Getty Images' motion to dismiss, it does not discuss the other two motions.

**Discussion**

When considering a motion to dismiss under Federal Rule of Civil procedure 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal Order of Police of*

*Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive the motion, the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Thompson alleges that Getty Images violated the Illinois Right of Publicity Act (IRPA), which prohibits the use of an individual's identity for commercial purposes without his written consent. 765 ILCS 1075/30. The IRPA defines a commercial purpose as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5.

Thompson contends that Getty Images violated the IRPA by using his identity without his consent for a commercial purpose, namely, the offer for sale of photographs of himself. Specifically, Thompson alleges that "without obtaining permission to exploit [his] name and likeness, . . . Getty obtained pictures and placed same on the internet for purposes of commercial exploitation for sale and distribution to the general public." Compl. ¶ 17. He also alleges that "Getty's conduct has made [his] pictures available for commercial use." *Id*. ¶ 18. Drawing all reasonable inferences in favor of the plaintiff, it appears that Thompson makes two arguments for why Getty Images' display of his photos constitutes a "commercial purpose" under the IRPA: (1) because Getty Images used his photos to promote the sale of a product, i.e., his photos, and (2) because Getty Images made his photos available for commercial use.

3

These allegations are insufficient to state a claim under the IRPA. The statute's commercial purpose requirement does not prohibit the mere sale of someone's photograph. Rather, the IRPA prohibits the use of an individual's image to promote or entice the purchase of some other product than the photograph itself. *See, e.g., Toney v. L'Oreal*, 406 F.3d 905, 910 (7th Cir. 2005) (commercial purpose requirement met where plaintiff's photograph on the packaging of a hair care product without her consent appeared to endorse the product); *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012) (dismissing claim under the IRPA because plaintiff's identity was "not being held out or used to entice anyone to buy a product"). This interpretation of the statute is consistent with its legislative history. *See U.S. Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir. 1997) ("The primary rule is that courts should ascertain and give effect to the intention of the legislature.") (citing Illinois law). Indeed, during debate about the statute, the Illinois House of Representatives cited examples of the kind of commercial uses that the IRPA is meant to address. These included the unauthorized use of an individual's picture on the back of a CTA bus indicating that he endorsed a particular kind of hair tonic and an ad by a food establishment stating that its cheeseburger was endorsed by the Speaker of the House. 90th Ill. Gen. Assem., House Proceedings, May 21, 1998, at 7-8 (statements of Representative Black). Unlike those examples, Getty Images does not use Thompson's photographs in connection with an offer to sell or a sale of some other product, merchandise, good, or service as contemplated by the statute. *See* 765 ILCS 1075/5. Instead, Getty Images displays a preview of the exact thing it seeks to sell – a photograph. The Court is unpersuaded that showing a buyer a photograph of a person

4

that she is considering whether to buy qualifies as a "commercial purpose" as the IPRA uses that term.

Thompson's second allegation – that Getty Images made photos of Thompson "available for commercial use" – also fails to state a claim. Compl. ¶ 18. Thompson contends that even though Getty Images licenses photographs of him for editorial use only, it should nonetheless be liable for any unauthorized commercial use by its customers. In other words, Thompson asks the Court to impose liability on Getty Images because an end-user might choose to breach its license, regardless of the contractual limitations Getty Images imposes on the license.

The Court declines to read the statute so broadly. Thompson's argument, taken to its logical conclusion, would make any person or entity selling a photograph for proper purposes strictly liable for an end-user's decision to use the photograph improperly. Under Thompson's theory, liability would attach to a photographer who licensed his photograph to his agent, who in turn licensed the photograph to a publication that then printed the photograph for a commercial purpose. This is not a reasonable interpretation of the statute, as it would extend liability too far and chill speech protected by the First Amendment. *See Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 976 (7th Cir. 2004) ("We interpret statutes to avoid absurd results.").

To be sure, case law in the trademark context suggests that knowledge of an end-user's infringement may create secondary liability. *See, e.g., Medic Alert Found. U.S., Inc. v. Corel Corp.*, 43 F.Supp.2d 933, 940 (N.D. Ill. 1999) ("In light of Corel's end-user agreement, it had no reason to expect that one of its software users would violate

the contract and use one of its images for commercial use, until it was provided with actual information that someone had done so."). The Court need not determine whether to extend such case law to the IRPA, however, because Thompson does not allege that Getty Images knew that its customers were using his photos impermissibly.

The Court acknowledges that the holding in *Brown v. ACMI Pop Div.*, 375 Ill. App. 3d 276, 873 N.E.2d 954 (2007) (*Brown II*), a factually similar case in the Illinois Appellate Court, is arguably contrary to the ruling the Court is making here. In that case, James Brown, a well-known recording artist, sued Corbis Corporation alleging that Corbis' internet sale of photographs of Brown violated his right of publicity under the IRPA. In ruling on a motion to dismiss, the trial court initially concluded that Corbis' sale of Brown's photographs was noncommercial. In later reversing itself, however, the trial court concluded that Corbis was using Brown's image to sell a "product" and that he had sufficiently stated a claim under the IRPA. *Brown v. Corbis Corp.*, No. 02 L 005872, 2004 WL 5742324, at *3 (Ill. Cir. Ct. 2004) (*Brown I*) (finding that Corbis "itself is selling a product, copyrights, and promoting such copyrights by use of another's image without the other's consent"). The Illinois Appellate Court acknowledged that Corbis's argument that it was not using the image to sell a product, but rather to sell a license, a form of intangible property, was one of the "compelling" arguments made by the opposing parties. *See Brown II*, 375 Ill. App. 3d at 285, 873 N.E.2d at 961. The court nonetheless affirmed the trial court's decision, stating that it "[could] not say that the facts are undisputed that Corbis's display of the photos . . . did not in some way constitute an improper commercial use." *Id.* at 285, 873 N.E.2d at 962.

As a federal court exercising diversity jurisdiction, this Court must apply state law

6

as the Illinois Supreme Court would apply it. *See Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000). Where, as in this case, the state's highest court has not spoken, a district court exercising diversity jurisdiction must attempt to predict how the state's highest court would decide the issue. *Mut. Serv. Cas. Ins. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001). Although the decisions of the state appellate court are persuasive, they are not binding if there is a "compelling reason" to believe that the state appellate court stated the law incorrectly. *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004); *Home Valu*, 213 F.3d at 963.

The appellate court's *Brown II* decision is less than a ringing endorsement of the claim and theory that Thompson is pursuing in this case, given the language quoted earlier and the procedural constraints by which the court considered itself bound. But to the extent that *Brown II* is inconsistent with this Court's determination in the present case, the Court respectfully finds the decision unpersuasive, for at least two reasons. First, although the trial court concluded – in the ruling that the appellate court affirmed – that a copyright is a "product," it also stated that the "copyrights themselves consist merely of the picture." *Brown I*, 2004 WL 5742324, at *3. The trial court nevertheless considered Brown's allegations that his image was being used to sell the same image sufficient to satisfy the "commercial purpose" requirement. This contradicts the plain language and purpose of the statute as interpreted by this Circuit's case law and informed by the legislative history.

Second, the courts' analyses in *Brown I* and *Brown II* would extend liability too far. For example, the trial court in *Brown I* determined that the mere sale of an individual's picture would constitute a violation of the statute unless it fell under one of

7

the IRPA's enumerated exceptions. The court in *Brown I* recognized, as this Court does, that such a broad reading of the IRPA would impose wide-ranging liability and would thereby chill protected speech. Nevertheless, the court concluded that the sale of a photo to an individual who keeps that photo for personal use without authorization gives rise to liability under the IRPA. Without any further limitation, that holding leads to the very problem that the court identified – chilling protected speech.

Given these compelling reasons not to follow *Brown II*, the Court concludes that the Illinois Appellate Court's holding does not represent how the Illinois Supreme Court would decide the issue.

### Conclusion

For the foregoing reasons, the Court grants Getty Images' motion to dismiss [docket no. 15]. Thompson's partial motion for summary judgment [docket no. 11] and Getty Images' 56(d) motion [docket no. 22] are terminated as moot. The Court will enter final judgment against Thompson unless, on or before July 11, 2013, Thompson files a motion for leave to amend including a proposed amended complaint that states a viable claim. The case is set for a status hearing on July 15, 2013 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 1, 2013